## *IN THE UNITED STATES DISTRICT COURT*
## *FOR THE MIDDLE DISTRICT OF FLORIDA*

**Victor Lopez,**
*Defendant-Plaintiff*

**Claudia Lopez**
*Plaintiff*

*Vs*

**WILMINGTON SAVINGS FUND**
dba Christina Trust trustee for bcat 2015-13 btt
*Plaintiff -Defendant*

**WELLS FARGO.NA**
*Plaintiff -Defendant*

**US BANK NATIONAL -RCF2 ACQUISITION TRUST**
*Defendant*

**QUINTAIROS, PRIETO,WOOD & BOYER PA**
*Defendant*

**TYLER MESMER ALL FLORIDA**
*Counselor Plaintiffs in lower case - Defendantd*

**ALL FLORIDA PROPERTY GROUP, INC**
*Defendant*

**WADE STAFFORD**
*Defendant*

**UNKNOWN DEFENDANTS**

_____

**_On Case FROM THE EIGHTEENTH JUDICIAL CIRCUIT COURTS OF FLORIDA FOR BREVARD COUNTY**
**Case 05-2009-ca048771- Case 05- 2018 ca 023459**

| **Victor Lopez.** | **Claudia Lopez** |
|---|---|
| Defendant-Plaintiff | Plaintiff |
| Victor1937lopez@gmail.com | Linasafina94@gmail.com |

2049 Lauren rd , Apopka Fl 32703
321-292-9929

1

**Reserve the Rights to Amend    Demand Jury Trial**

## 20 MILLIONS ACTION FOR VIOLATION OF RIGHTS UNDER 42 U.S. CODE SEC. 1983.

**DEPRIVATION OF CIVIL RIGHTS, VIOLATION OF DUE PROCESS, CONSPIRACY TO COMMIT REAL ESTATE DEED FRAUD, FORGERY, WRONGFUL FORECLOSURE,, ILLEGAL EVICTION, CONVERSION.**

**VIOLATIONS OF UCC ARTICLES 3,2,9 SPECIAL VEHICLE PURPOSE PATTERN.THIS CLAIM IS FOR DECLARATORY JUDGMENT And QUITE TITLE**

[ "**Cujusque Rei Potissima Pars"||The Principle Part Of Everything Is In The Beginning**]

Comes Now Plaintiffs to file their Claim against the defendant's. The claim will be brought forward in Common Law, "Administrative Law," "Law," "Equity," and Under the Uniform Commercial Code. This 42 U.S. Code Sec. 1983 Civil Action Claim is for Depravation of Civil Right Under Color of Law, conspiracy to commit real estate deed fraud, and forgery. This case is brought to enforce constitutional rights under 42 U.S.C. § 1983, conspiracy statutes under Federal Law.

**42 U.S. Code § 1983 - Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be a statute of the District of Columbia.

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs Victor G Lopez and Claudia N Lopez (hereinafter referred to as "Plaintiffs "), who, in propia  personal respectfully request this honorable Court to accept this Complaint and Request for relief .  Plaintiffs Demand for Jury Trial against Defendants U.S. BANK, NATIONAL ASSOCIATION, not in its individual capacity, but solely as Owner/Trustee for RCF2 Acquisitions Trust ("US Bank"); WILMINGTON SAVINGS FUND SOCIETY, FSB,

doing business as Christina Trust, not in its individual capacity, but solely as Trustee for BCAT 2015-13BTT ("WSFS"); SELENE FINANCE, LLC ("Selene"); and WELLS FARGO, N.A. ("WF") , QUINTAIROS, PRIETO,WOOD & BOYER PA ("QPWB), TYLER MESMER ( "TYM"), ALL FLORIDA PROPERTY GROUP ("AFPG"), WADE STAFFORD in his individual capacity and Unknown Defendants hereinafter collectively referred to as "Defendants"), and in support thereof, states the following:

## PARTIES

1.    Plaintiffs are Victor G Lopez and Claudia Lopez *sui juris* before this Court and at all times material, are  residents of the State of Florida

2.    Defendant WF is a for-profit entity, whom upon information and belief, <u>was  registers to conduct everyday business in Brevard County, Florida.</u>  WF is a corporation incorporated in the State of California.

    a.   Defendant  WF Originated the security instrument originated the security instrument in year 2008 through a mortgage document Case No. **05-2009-ca048771**

3.    Defendant WSFS is a for-profit entity, whom, upon information and belief,   was not register licensed to conduct everyday business in Brevard County, Florida.

    a.  WSFS was fraudulent assigned to the mortgage by WF in year 2015,

    b.   In year 2018, WSFS  filed a foreclosure action against the subject property.

    c.  WSF without any legal rights  and Standing to the secure intrument open a foreclosure  action Case No..  (hereinafter referred to as the "foreclosure action").

4.    Property is located in Florida in the county of Brevard ,  1455 Martin Road, Rockledge, FL 32955 (hereinafter referred to as the "subject property").

5.     Defendant Selene is a mortgage servicing company, whom, upon information and belief, is licensed to conduct everyday business in Brevard County, Florida.  Selene is a corporation incorporated in Houston, Texas.

6.     Defendant US Bank is a for-profit entity, whom, upon information and belief, was not licensed to conduct everyday business in Brevard County, Florida when assigned to the mortgage

   a.  US Bank is a corporation incorporated in the State of Delaware.

   b.  On May 23, 2022, US Bank slandered  title to the property through an illegal foreclosure sale as a result of the foreclosure action.

   c.   US Bank  is a corporation incorporated in the State of Delaware.

7.     Defendant QPWB is a law Firm who unethically represents Defendants

   a.  Defendant whom, upon information and belief, was  not registerv to conduct everyday business in Brevard County, Florida when filed Foreclosure action in year 2018.

   b.  QPWP whom, upon information  and belief  may not be  licensed to Practice Law in the State of Florida as not Foreign license  was found

8.     Defendant Tyler M. Mesmer, Far Bar club membership number #78329,

   a.  Defendant is included in this lawsuit in his individual capacity, and claims have been made against his personal assets.

   b.   An unidentified defendant, Mesmer's wife Jane Doe , will be added to the suit once discovered.

c. It is believed, based on available information, that Mesmer <u>is not licensed to practice law in Florida,</u> as no record of a foreign registered license was not found at the time of filing.

9. Defendant All Florida Property Inc. is a corporation duly registered to conduct business in the state of Florida.

    a. An unknown defendant, referred to as "John Doe," or any other individual or entity acting under the defendant's brokerage, will be added as a defendant to the lawsuit upon discovery of their identity.

    b. Unknown defendants who are employed by the defendant, such as the eviction crew, will also be added as defendants to the suit upon discovery of their identity.

10. Defendant Wade Stafford, a Licensed Realtor authorized to conduct business in the Florida Space Coast, holds License #: 3497122.

    a. The lawsuit includes Defendant Stafford in his personal capacity, with claims made against his personal assets.

    b. Defendant is representing Defendants a Realtor

    c. Defendant has received 2 demands id cease and desist to stop the sale of the property .

**865.09  Fictitious name registration.**—
Fictitious Name Act."
(3)  REGISTRATION.—
(a)  A person may not engage in business under a fictitious name unless the person first registers the name with the division by filing a registration listing:
1.  The name to be registered.
2.  The mailing address of the business.
3.  The name and address of each registrant.
   PENALTIES.—

(a)   If a business fails to comply with this section, neither the business nor the person or persons engaging in the business may maintain any action, suit, or proceeding in any court of this state with respect to or on behalf of such business until this section is complied with.

## JURISDICTION AND VENUE.

11.     Jurisdiction is further proper in this Court under 28 U.S. Code § 1331, as most of the claims arise under federal law, and present federal questions.

12.     Fraud in the Inducement: Violations of federal law, such as mail or wire fraud, which could invoke federal jurisdiction under 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud).

13.     Slander of Title: If there is diversity of citizenship between the parties (i.e., the plaintiff and defendant are citizens of different states) and the amount in controversy exceeds a certain threshold, federal diversity jurisdiction under 28 U.S.C. § 1332 may apply.

14.     Truth in Lending Act (TILA) Violations: TILA claims are  basis for federal jurisdiction under 15 U.S.C. § 1640(e).

15.     Real Estate Settlement Procedures Act (RESPA) Violations: RESPA  basis for federal jurisdiction under 12 U.S.C. § 2614.

16.     Violation of Due Process Rights: If your due process rights were violated during the foreclosure and eviction process, you may assert a claim under the Fifth and Fourteenth Amendments of the United States Constitution, invoking federal jurisdiction under 42 U.S.C. § 1983.

17.     Violation of Property Rights: If your property rights were violated through the wrongful foreclosure and eviction, you may assert a claim under the Fifth and Fourteenth Amendments, invoking federal jurisdiction under 42 U.S.C. § 1983.

18.    Violation under 42 U.S.C. § 1983: This federal law provides a cause of action for individuals whose constitutional rights have been violated by state actors. If the foreclosure and eviction proceedings were conducted by state actors, such as a state court, you may have a claim under 42 U.S.C. § 1983.

19.    Title 18 U.S.C. § 241: This law prohibits conspiracy to deprive an individual of their constitutional rights under color of law. If there was a conspiracy involving state actors to deprive you of your constitutional rights during the foreclosure and eviction process.

20.    Title 18 U.S.C. § 245: This law prohibits the interference with certain federally protected activities, including housing rights. If you were subjected to violence or intimidation based on your race, color, religion, or national origin during the foreclosure and eviction process.

21.    Title 18 U.S.C. § 242: This law makes it a federal offense for a person acting under color of law to deprive an individual of their constitutional rights. If state actors, such as law enforcement officials or court personnel, violated your constitutional rights during the foreclosure and eviction process.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

All actions taken by the Defendants' employees, agents or representatives, as alleged in this complaint, were performed within the scope of their official duties and under the color of law.

22.    On or about April 28, 2008, Plaintiff had taken out a Mortgage on the subject property ("Mortgage") and a purported Note ("Note").

23.     The Mortgage Loan only exists through the tangible instruments creating it, the Note and the Mortgage.

24.     Upon information and belief, Defendants and/or its predecessor(s) in interest are guilty of an extortionate extension of credit pursuant to §687.071(1)(e), Florida Statutes, which defines it as "any extension of credit whereby it is the understanding of the creditor and the debtor at the time an extension of credit is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person."

25.     Defendants and/or its predecessor(s) in interest are guilty of such an extension of credit because at the time of the loan, it was understood that Plaintiff's failure to repay the loan could result in the use of criminal means by the Defendant to cause harm to Plaintiff or others' persons, reputation or property, including trespass on the subject property.

26.     The sale of the rights to the Intangible Obligation to the Trust without stripping away the rights to the Intangible Obligation from the rights to the Note could only be accomplished with the accompanying negotiation of the Note and the accompanying assignment of the Mortgage to the Trust which is a legal impossibility. Whereas the Trust as a standalone party has not lawfully been conveyed the Note, much less been filed of record as a secured creditor.

27.     According to the PSA for the Trust, the transfer and sale of all Beneficial Interest of the Mortgage to Trust should have been done on or before the Closing Date of the Trust which was April 28, 2008 These requirements from the PSA also mean

the Trust is unable to have any other assets put into the Trust after the Closing Date.

28.     The Original Lender gave up all rights to the Intangible Obligation to the Trust on or before April 28, 2008 Once the original lender had given up the rights to the Intangible Obligation, the rights to the Intangible Obligation were stripped away from the rights to the Note and the rights to the Mortgage. The original lender could transfer beneficial rights to the Note or Mortgage; however, that beneficial interest would not include rights to the Intangible Obligation.

29.     The consequences of the rights to the Intangible Obligation being stripped away from the beneficial interests of the Note and Mortgage are that the Note is without an Intangible Obligation to evidence and the Mortgage is without an Intangible Obligation to enforce conditions against.

30.     Internal Revenue Code Section 860 regulates the activities and requirements of a REMIC Trust. *According to 26 CFR§ 1.860D-1(c) (2)* **Identification of assets.** *The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC.*

31.     In other words, the REMIC is not officially formed until the Sponsor of the Trust, identifies and transfers all the specific assets (the specific loans) of the REMIC.

32.     The PSA for the Trust specifically identifies a Closing Date which is the last day that an asset (loan) can be "identified for inclusion" in the Trust/REMIC. The Closing Date also serves as the startup day for the REMIC. According to Internal

Revenue code Section, "All of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter".

33.    Any of the alleged "Assignments of Mortgage" documents are filed/ were filed only to simply <u>memorialize</u> the purported sale of the  Tangible Promissory Note and the acquiring of rights; <u>it does not cause</u> the sale nor the acquiring of rights. The sale is to be done in accordance with statutory requirement of law F.S.A. § 677.501 <u>which has not happened</u>. The acquiring of rights is to be done in accordance with statutory requirement of law F.S.A. § 673.2031 <u>which has not happened</u>.

34.    F.S.A.§677.501. Form of negotiation and requirements of due negotiation  (1)  The following rules apply to a negotiable tangible document of title: (a) If the document's original terms run to the order of a named person*, **_the document is negotiated by the named person's indorsement and delivery_**...* (emphasis added).

35.    The  Mortgage filed of record is unperfected, as one cannot perfect an instrument to an as-of-yet-unnamed payee. For the  Note to remain a perfected public County record, the secured Mortgage requires the identity of the subsequent payee(s) to be on the face of the  Note and the assignment of the Mortgage rights needs to be properly and timely filed of record in the Official Records of the Brevard County Clerk of the Court's Office.

36.    The  original lender, along with signing away all rights to the  Note, wrote instructions that made its intention of negotiation of the  Note clear. The clear intention was that the original lender's negotiation of the   Note will only be

10

complete when the payee is named. The Note with an as-of-yet-unnamed payee is not and cannot be treated as a "bearer" instrument as no person will acquire any right to the Note until a payee is named. The Note with an as-of-yet-unnamed payee is an incomplete instrument pursuant to F.S.A. § 673.1151.

37.    Under F.S.A. § 673.2031 (1), a transfer of the Note through which rights can be acquired by a transferee is defined as a delivery from one person to another person.

38.    When the original lender signed away all rights to the Note to an as-of-yet-unnamed payee, the original lender did not deliver the Note to another person as required of a transfer through which rights can be acquired.

39.    Beside the fact that all rights were released upon signature, or that the signing away of all rights did not accomplish a negotiation of the Note, the original lender no longer has the entire rights to the Note. The original lender must have an entire interest in the Note for a negotiation to occur. The intangible interest in the Note has been transferred to the Trust. The original lender can no longer claim the entire rights to the Note. Defendants cannot accomplish a negotiation of the Note.

40.    Under F.S.A. § 677.501, the original lender is now the only party that can accomplish a negotiation of the Note. Under F.S.A. § 673.2031 (4), a negotiation of the Note cannot occur until the original lender regains an entire interest in the Note. The original lender cannot accomplish a negotiation of the Note because the original lender can no longer claim the entire rights to the Note. A negotiation

of the Note cannot occur until the original lender regains <u>the entire rights</u> to the Note.

41.    The original lender allegedly transferred the rights to the Intangible Obligation to the Trust and released the rights to the Note without naming a transferee. The rights to the Intangible Obligation were transferred to the Trust so the Note will travel on without the rights to the Intangible Obligation. Whoever becomes the transferee of the Note, through being named payee, will not acquire the right to enforce the Note.

42.    The original lender has released all rights to the Note to an as-of-yet-unnamed payee. The Mortgage as a contract can only enforce its contractual terms against the obligation evidenced by the Note.

43.    Interest in the Mortgage is no longer with the original lender, yet no one else has any authority to enforce its terms, while the Note is waiting for someone to acquire rights. The Mortgage is an unenforceable contract, no longer tied to an obligation to enforce its contractual terms.

44.    Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor. Even if ownership of the Note and the Mortgage could be rejoined, the Mortgage, as a now unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over, cannot be returned to being an enforceable contract without consent.

45.    The Trust has rights to the Intangible Obligation.

46.    The Trust is not named as payee on the Note and does not now have rights to the Note. For the Trust to gain rights to the Note, the Trust would have to be named payee.

47.    Trust and its classes, its officers and its agents are prohibited from accepting any assets on behalf of the Trust after April 28, 2008 Trust and its classes, its officers its and agents can longer accept the rights to the Note.

48.    Ownership of the Note and the rights to the Intangible Obligation will remain separate.

49.    Because the rights to the Mortgage were separated from the rights to the Intangible Obligation, and will remain separate, the Mortgage is left with no way to enforce its conditions over the obligation which should be evidenced by the Note, making the Mortgage an unenforceable contract.

50.    The ownership of the Intangible Obligation was separated from the rights to the Note and the rights to the Mortgage, leaving the Note no Intangible Obligation to evidence and the Mortgage no Intangible Obligation to enforce conditions over.

51.    The original lender retained no beneficial interest in the Intangible Obligation after selling the Intangible Obligation to the Trust on or before April 28, 2008 No acceptable assignments of the Mortgage to the Trust have been recorded into the Official Records of the Brevard County Clerk of the Court's Office. There is no evidence of negotiations of the Note to the Trust. With no properly recorded owner of the Mortgage, there is no one to enforce the conditions over the Intangible Obligation which is no longer evidenced by the Note. The Intangible Obligation is no longer secured by the subject property.

52.    Having no specific properly secured owner of the limited beneficial interest of the Note, there is no way to enforce the stripped-away Intangible Obligation through the Note.

53.    Defendant WF initiated foreclosure proceedings.

54.    Defendant WSF substituted WS as Plaintif.

55.    In 2018, WSFS refilled the wrongful foreclosure action against various defendants, including the Plaintiff herein.

56.    Plaintiff had a Forensic Loan Analysis Report ("FLAR") prepared.

57.    The FLAR reveals multiple missing disclosures and statements required by a lender which were never provided to Plaintiff.

58.    The FLAR indicates a break in the chain of title on the subject property.

59.    The FLAR demonstrates bad faith on the part of Defendants.

60.    The FLAR denotes Defendants' multiple violations of state and federal law.

61.    As a direct and proximate result of Defendants' actions as described herein, Plaintiff has been damaged.

### *Loan Audit and Securitization findings*

#### Blank Endorsement

The blank endorsement that was executed by Wells Fargo Bank, NA on an unknown date was signed by Joan M. Mills, Vice-President

Examiners' Comments

The blank endorsement that was executed by Wells Fargo Bank, NA on an unknown  date was signed by

Joan M. Mills, Vice-President

Blank Endorsement

Prima Facie Evidence

There is prima facie evidence that the signature of the endorser's  representative on this endorsement has been forged or robo-signed or  signed by a surrogate signer. Robo-signing on this endorsement is an issue  , although it may not be necessary to prove that a felony has been  committed in order to render this endorsement null and void from the  beginning.

· Thus the note could be null and void.

· The note is possibly void

· The note endorsement robo signer issue creates an argument for  saying the note document itself could be void.

21.

**Examiners' Comments**

The Deed of Trust has been assigned four times.

Selene Finance, LP must also prove that it has been duly appointed as Attorney in-Fact for Wilmington Savings Fund Society, FSB, doing business as Christiana Trust as trustee for BCAT 2015-13BTT.

Meridian Asset Services, LLC must also prove that it has been duly appointed as Attorney-in-Fact for Wilmington Savings Fund Society, FSB, doing business as Christiana Trust as trustee for BCAT 2020-1TT and MCLP Asset Co., Inc.

Each assignment should have been executed as a consequence of an endorsement of the note and an endorsement may be in blank and once a note has been endorsed in blank, it can be endorsed further by mere delivery).

The last assignee is US Bank Trust, NA as Owner Trustee for RCF 2 Acquisition Trust.

The Fixed Rate Note has been endorsed in blank. It could not be ascertained if the trust is the holder or last endorsee of the note.

There is prima facie evidence that the signature of the endorser's representative on the blank endorsement has been forged or robo-signed or signed by a surrogate signer.

The burden of proof lies with US Bank Trust, NA as Owner Trustee for RCF 2 Acquisition Trust to prove that it has in its possession both the Fixed Rate Note and the Mortgage together with the documents evidencing the proper endorsements and assignments.

Us Bank was assigned to the mortgage on 2021

Wilmington Savings Fund Society, FSB, doing business as Christiana Trust as trustee for BCAT 2015-13BTT is also named as plaintiff in the Motion to Reschedule Foreclosure Sale in 2022

Examiners' Comments

The Deed of Trust has been assigned four times. The last assignee is US Bank Trust, NA as Owner Trustee for RCF 2 Acquisition Trust. This last assignment shows or purports to show that the loan is now owned by a trust. It could not be ascertained, however, if the Fixed Rate Note was endorsed to this trust.

About RCF 2 Acquisition Trust

1. RCF 2 Acquisition Trust had no documents on file with the Securities and Exchange Commission as of March 24, 2022, the date of examination.
   https://sec.report/CIK/Search/RCF%202%20Acquisition%20Trust

2. RCF 2 Acquisition Trust is a Delaware Statutory Trust filed On September 28, 2020. The company's filing status is listed as Active and its File Number is 3761372. The Registered Agent on file for this company is U.S. Bank Trust National Association and is located at 1011 Centre Road Suite 203, Wilmington, DE 19805.
   https://www.bizapedia.com/de/rcf-2-acquisition-trust.html

RCF 2 Acquisition Trust appears to be foreclosing on the delinquent loans in its portfolio (or specializes in the foreclosure on the delinquent loans) but had no documents on file with the Securities and Exchange Commission as of the date of examination.

Examiners' Comments .

- The chain of title is a possible fraudulent chain.
- Thus the note itself backing the debt, both could possibly be considered fraud.
- The debt itself being transferred could be fraudulently transferred.
- This creates question as to the validity of the note, and could mean the note itself could be void. Thus any transfers of this debt(loan) to any financial instution is fraudulent, since the chain of ownership is not perfected.
- In the landmark case Glaski vs Bank of America, it was ruled in favour of the homeowner. It was ruled that the foreclosing entity must have both original note and deed of trust at the time of foreclosure.
- The chain of tite/chain of ownerhip possibly not perfected. Which creates argument against anyone trying to foreclose.
- Original Note must be in possession of the foreclosing entity in order to foreclose, according to the case Glaski vs Bank of America
- On this property, it does not appear that the financial entities have poessession of the original note since an original copy has not yet been furnished. Thus they cannot foreclose. Nor do they have any right to the property, directly or indirectly.

- At this time, no financial entity or company can foreclose due to the original note argument.

**UCC Section 3-301** provides only three ways in which an individual may qualify as the person eligible to enforce a note, two of which require the person to be in possession of the note (which may include possession by a third party that possesses it for the person)

• The first way a person may qualify as the person eligible to enforce a note will be its "holder." This familiar concept, put down in more detail in UCC Section 1-201(b)(21)(A), requires that the person be in possession of the note and either (i) the note is payable to that person or (ii) the note is payable to bearer.

Determining to whom a note is payable requires examination not only of the face area of the note but additionally of any indorsements. This is because the party to whom a note is payable may be changed by indorsement to ensure that, for instance, a note payable to the order of a named payee that's indorsed in blank by that payee becomes payable to bearer.

• The 2nd way a person may be the person eligible to enforce a note will be a "Non-holder in possession of the [note] who has the rights of a holder." o Just how can an individual who is not the holder of a note have the rights of a holder? This may occur by operation of law beyond your UCC, such as the law of subrogation or estate administration, by what type person may be the successor to or acquires another person's rights. Additionally it may occur if the delivery of the note to that person is really a "transfer" (as that term is defined in UCC Section 3-203, see below) because transfer of a note "vests in the transferee any right of the transferor to enforce the instrument." Thus, in case a holder

(who, as seen above, is really a person eligible to enforce a note) transfers the note to another person, that other person (the transferee) obtains from the holder the right to enforce the note even though the transferee does not end up being the holder (as in the example below). Similarly, See UCC § 1-103(b) (unless displaced by particular provisions of the UCC, the law of, *inter alia*, principal and agent supplements the provisions of the UCC). See also UCC § 3-420, Comment 1 ("Delivery to an agent [of a payee] is delivery to the payee."). Note that "delivery" of a negotiable instrument is defined in UCC § 1-201(b)(15) as voluntary transfer of possession. This Report does not address the determination of whether a particular person is an agent of another person under the law of agency and the agency law implications of such a determination.

"**Indorsement**," as defined in UCC § 3-204(a), requires the signature of the indorser. The law of agency determines whether a signature made by a person purporting to act as a representative binds the represented person. UCC § 3-402(a); see note 12, supra. An indorsement may appear either on the instrument or on a separate piece of paper (usually referred to as an *allonge*) affixed to the instrument. See UCC § 3-204(a) and Comment 1, par. 4. UCC Section 3-205 contains the rules concerning the effect of various types of indorsement on the party to whom a note is payable. Either a "special indorsement" (see UCC § 3-205(a)) or a "blank indorsement" (see UCC § 3205(b)) can change the identity of the person to whom the note is payable. A special indorsement is an indorsement that identifies the person to whom it makes the note payable, while a blank indorsement is an indorsement that does not identify such a person and results in the instrument becoming payable to the bearer. When an instrument is endorsed in blank (and, thus, is payable to bearer), it may be negotiated by transfer of possession alone until specially endorsed. UCC § 3-205(b).

See Official Comment to UCC § 3-301. 23 UCC § 3-203(b). Subsequent transfer will result in the following transferee being truly a person eligible for enforce the note.

Under what circumstances does delivery of a note qualify as an exchange? As mentioned in UCC Section 3-203(a), a note is transferred "if it is delivered by a person apart from its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." For instance, assume that the payee of a note sells it to an assignee, going to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee won't qualify as a holder (because the note continues to be payable to the payee) but, because the transaction between the payee and the assignee qualifies as an exchange, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the person eligible for enforce it. Thus, the failure to acquire the endorsement of the payee doesn't prevent a person in possession of the note from being the person eligible for enforce it, but demonstrating that status is more difficult. The reason being the person in possession of the note must also demonstrate the purpose of the delivery of the note to it to be able to qualify as the person eligible for enforce. If the note was transferred for value and the transferee does not qualify as a holder because of the lack of endorsement by the transferor, "the transferee has a specifically enforceable right to the unqualified endorsement of the transferor." See UCC § 3-203(c).

25 UCC § 3-309(a)(iii) (1990 text), 3-309(a)(3) (2002 text). The 2002 text goes on to provide that a transferee from the person who lost possession of a note may also qualify as a person entitled to enforce it. See UCC § 3309(a)(1)(B) (2002). This point was thought to be implicit in the 1990 text, but was rejected in some cases in which the issue was raised. The reasoning of those cases was rejected in Official Comment 5 to UCC § 9-109 and the point was made explicit in the 2002 text of Article 3.

To prevail the person must establish not only that the person is a person entitled to enforce the note but also the other elements of the maker's obligation to pay such a person. See generally UCC §§ 3-309(b), 3-412. Moreover, as is the case with respect to the enforcement of all rights under the UCC, the person enforcing the note must act in good faith in enforcing the note. UCC § 1-304. Subsequent transfer can lead to the next transferee being a person eligible for enforce the note.

**Illustrations:**

1.Maker issued a negotiable mortgage note payable to the order of Payee. Payee is in possession of the note, which has not been indorsed. Payee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).

2. Maker issued a negotiable mortgage note payable to the order of Payee. Payee indorsed the note in blank and gave possession of it to Transferee. Transferee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).

3. Maker issued a negotiable mortgage note payable to the order of Payee. Payee sold the note to Transferee and gave possession of it to Transferee for the objective of giving Transferee the proper to enforce the note. Payee did not, however, indorse the note. Transferee isn't the holder of the note because, while Transferee is in possession of the note, it's payable neither to bearer nor to Transferee. UCC § 1-201(b)(21)(A). Nonetheless, Transferee is really a person eligible to enforce the note. This is because the note was transferred to Transferee and the transfer vested in Transferee Payee's to enforce the note. UCC § 3-203(a)-(b). As a result, Transferee is really a nonholder in possession of the note with the rights of a holder and, accordingly, a person eligible to enforce the note. UCC § 3-301(ii).

4 Same facts as Illustrations 2 and 3, except that (i) underneath the law of agency, Agent is the agent of Transferee for purposes of possessing the note and (ii) it is Agent, rather than Transferee, to whom actual physical possession of the note is written by Payee. In the important points of Illustration 2, Transferee is just a holder of the note and a person eligible to enforce it. In the context of Illustration 3, Transferee is just a person eligible to enforce the note. Whether Agent may enforce the note or mortgage on behalf of Transferee depends partly on what the law states of agency and, in the event of the mortgage, real property law.

5. Same facts as Illustration 2, except that after obtaining possession of the note, lost the note and its whereabouts cannot be determined. Transferee is just a person eligible to enforce the note even though Transferee does not need possession of it. UCC § 3-309(a). If Transferee brings an action on the note against Maker, Transferee must establish the terms of the note and the

## VIOLATIONS OF UCC ARTICLES 3,2,9 and SPECIAL VEHICLE PURPOSE PATTERN

62.    As a direct and proximate result of Defendants' actions as described herein, Plaintiff has been damaged.

63.    Lack of Standing (UCC Article 3):

1. UCC 3-301: Person Entitled to Enforce Instrument.

2. UCC 3-203: Transfer of Negotiable Instrument

3. UCC 3-205: Defenses and Claims in Recoupment

4. UCC 3-303: Value and Consideration.

64.    Violation of UCC Article 9 (Secured Transactions).

1. UCC 9-203: Attachment and Enforceability of Security Interest

2. UCC 9-308: When Possession by Secured Party Perfects Security Interest

65.    Failure to Perfect the Security Interest:

1. UCC 9-310: Effectiveness of Security Agreement

2. UCC 9-311: Perfection of Security Interest in Chattel Paper

19

3. UCC 9-203: Attachment and Enforceability of Security Interest

66. Lack of Notice:

1. UCC 9-611: Notification of Assignment

2. UCC 9-308: When Possession by Secured Party Perfects Security Interest

67. Unconscionability:

1. UCC 2-302: Unconscionable Contract or Clause

68. Defendants violations

1. Mortgage and Deed of Trust:Violation of UCC Article 9, Section 9-203, regarding the failure to properly attach and enforce a security interest in the mortgage and deed of trust.

2. Violation of UCC Article 9, Section 9-308, regarding the failure to perfect the security interest in the mortgage and deed of trust.

3. Violation of UCC Article 9, Section 9-401, regarding the unauthorized alienation of debtor's rights.

69. Enforcement and Reconveyance:

1. Violation of UCC Article 3, Section 3-104, regarding the improper handling of negotiable instruments related to the enforcement and reconveyance of the mortgage and deed of trust.

2. Violation of UCC Article 3, Section 3-301, regarding an unauthorized person attempting to enforce the negotiable instruments.

70. Special Purpose Vehicle (SVP) Misconduct:

1. Violations related to the SVP, as governed by specific state laws and regulations, including but not limited to the failure to comply with statutory requirements governing the establishment and operation of the SVP, misrepresentation

or fraudulent activity related to the SVP's structure, purpose, or transactions, and breach of fiduciary duties in managing and administering the SVP.

71.     Plaintiffs, homeowners, dispute the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership of Plaintiffs' mortgage note and/or Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in Plaintiff's Home which is described in detail herein. For these reasons, the Court should Quiet Title to the property in Plaintiffs' name.

72.     Additionally, Plaintiffs homeowners bring causes of action against all defendants for fraud, intentional infliction of emotional distress, rescission, declaratory relief based, and violations of T.I.L.A. and R.E.S.P.A., upon the facts and circumstances surrounding Plaintiffs' original loan transaction and subsequent securitization. Defendants' violations of these laws are additional reasons this Court should quiet title the property in Plaintiffs' name and award damages, rescission, declaratory judgment, and injunctive relief as requested below.

73.     Plaintiffs allege that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of

the borrower's original Promissory Note and Mortgage, resulting in imperfect security interests and claims.

74.     Plaintiffs further allege that Defendants, and each of them, cannot establish possession and proper transfer and/or Endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

75.     The certificate holders are, in no sense, holders of any specific individual note and have no legal interest in any specific individual note. The certificate holders do not each hold undivided fractional interests in a note, which added together, total 100%. The certificate holders also are not the assignees of one or more specific installment payments made pursuant to the note.

76.     For the certificate holder, there is no note. A certificate holder does not look to a specific note for their investment's income payment. Instead, the certificate holder holds a security to a bond with specific defined payments. The issuer of trust certificates is selling segments of cash flow.

77.     The procedure for selling of the loans was to create a situation whereby certain REMIC tax laws were observed, and whereby the Issuing Entity and the Lender would be protected from issues regarding either entity going into bankruptcy.

78.    Plaintiffs allege that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them. Plaintiffs desire a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Mortgage.

79.    Plaintiffs also seek redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:a.

   a.    An invalid and unperfected security interest in Plaintiff's Home hereinafter described;

   b.    An incomplete and ineffectual perfection of a security interest in Plaintiff's Home.

## CAUSES OF ACTION

### I -LACK OF STANDING TO FORECLOSE

#### A. No Rights to the Secured Instrument

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

80.    An actual controversy has arisen and now exists between plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiffs contend that defendants and each of them, do not have the right to foreclose on the Property, or cannot prove to the court they have valid interest. Thus, the purported power of sale by the above specified Defendants, and each of them, no longer applies.

23

81.     Plaintiffs are informed and believe and there upon allege that the only

individual who has standing to foreclose is the holder of the note because

they have beneficial interest. The only individuals who are the holder of

the note are the certificate holders of the securitized trust because they

are the end users and pay taxes on their interest gains; furthermore, all of

the banks or other entities holding the note in the middle of the chain of

transfers were paid in full.

82.     Plaintiffs further contend that the above specified Defendants, and each of

them, do not have the right to foreclose on the Property because said

Defendants, and each of them, did not properly comply with the terms of

Defendants' own securitization requirements and falsely or fraudulently

prepared documents required for Defendants, and each of them, to

foreclose as a calculated and fraudulent business practice.

83.     Plaintiffs allege that the Defendants' actions in the processing, handling

and attempted foreclosure of this loan involved numerous fraudulent,

false, deceptive and misleading practices, including, but not limited to,

violations of federal laws designed to protect borrowers, which has

directly caused Plaintiffs to be at an equitable disadvantage to

Defendants, and each of them.

84.     Plaintiffs further request that title to the Property remain in its name,

with said Mortgage remaining in beneficiaries' name, during the

pendency of this litigation, and deem that any attempted sale of the

Property is "unlawful and void". Any attempt to transfer the beneficial

interest of a trust deed without actual ownership of the underlying note, is void under law. Therefore, defendant, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, defendant cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

85.     Defendants, and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that real property is unique.

86.     The wrongful conduct of the above specified Defendants, and each of them, has caused an irreparable harm to Plaintiff.

87.     Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent more pain and suffering to Plaintiff.

88.      Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique.


## II -CAUSE OF ACTION FRAUD IN THE CONCEALMENT.

 Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89.    Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique.

90.    Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.

91.    By concealing the securitization, Defendant concealed the fact that Borrower's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendant but not disclosed.

92.    Defendant knew or should have known that had the truth been disclosed, Plaintiffs would not have entered into transactions related to the property. Defendants intended to induce Plaintiff based on these misrepresentations and improper disclosures.

93.    Plaintiffs' reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiffs could have been alerted to issues of concern.

94.    Plaintiffs would have known of Defendants true intentions and profits from the property transactions. Plaintiffs would have known that the

actions of Defendant would have an adverse effect on the value of
Plaintiff's home.

95.    Defendants' failure to disclose the material terms of the transaction
induced Plaintiffs to enter into the loans and accept the Services as
alleged herein.

96.    Defendants were aware of the misrepresentations and profited from
them. As a direct and proximate result of the misrepresentations and
concealment.

97.    Plaintiffs were  damaged in an amount to be proven at trial, including but
not limited to costs of Loan, damage to Plaintiffs' financial security,
emotional distress, and Plaintiffs have incurred costs and attorney's fees.

98.    Defendants are guilty of malice, fraud and/or oppression. Defendants'
actions were malicious and done willfully in conscious disregard of the
rights and safety of Plaintiffs in that the actions were calculated to injure
Plaintiffs.

99.    As such Plaintiffs are entitled to recover, in addition to actual damages,
punitive damages to punish Defendants and to deter them from engaging
in future misconduct.


### III- FRAUD IN THE INDUCEMENT

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully
set forth herein.

27

100.   Defendants, intentionally misrepresented to Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

101.   The alleged Note and Mortgage and other loan documents, were induced by the fraud of the Defendants and their predecessors in interest and its co-conspirators, and are therefore void and unenforceable.

102.   Specifically, the originator of the loan and its co-conspirators made the following representations:

   a)   Before the loan was made, the originator and/or its co-conspirators represented to Plaintiff that they had superior knowledge, information, skill and ability in making mortgage loans, and that they would be looking out for the best interests of Plaintiff in the financing process and, in effect, protecting and promoting Plaintiff's benefit;

   b)   Before the loan was made, the Defendants and/or its predecessor(s) in interest represented to Plaintiff that: (1) Plaintiff would receive the best mortgage available; (2) That it would be a "good" loan, and (3) It would be of substantial benefit to Plaintiff;

   c)   The representations described in a) and b) above were made for the purpose of inducing Plaintiff to enter into the loan transaction;

   d)   The representations were false and known by Defendants and/or its predecessor(s) in interest to be false at the time the representations were made and at the time the loan was made;

e) The loan was not in Plaintiff's best interest, but rather was in the best interest and to the benefit of the Defendants and/or its predecessor(s) in interest;

f) Plaintiff reasonably relied on the representations by the Defendants and/or its predecessor(s) in interest to her detriment.

103. Defendants and/or its predecessor(s) in interest failed to disclose all costs, fees and expenses; charged excessive fees, gave kickbacks and made payments of fees to parties not entitled to receive them, and failed to provide Plaintiff with all disclosures required by law..

104. Defendants misrepresented that they are the "holder and owner" of the Note and the beneficiary of the Deed of Trust. However, this was not true and was a misrepresentation of material fact.

105. Defendants were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous.

106. Defendants fraudulently foreclosed on the Property which they have no monetary or pecuniary interest. This type of conduct is outrageous.

107. Defendant's failure to disclose the material terms of the transaction induced Plaintiffs to accept the Services as alleged herein. The material misrepresentations were made by Defendants with the intent to cause Plaintiffs to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property.

108. This material misrepresentation was made with the purpose of initiating the securitization process as illustrated above, in order to profit from the sale of the

Property by selling the note to sponsors who then pool the note and sell it to investors and other investment banks.

109.    Defendants were aware of the misrepresentations and profited from them.

110.    As a direct and proximate result of the misrepresentations and concealment, Plaintiffs were damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiffs' financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

111.    Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs.

As such Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct

## IV- VIOLATION OF CIVIL RIGHTS UNDER  USC 42 U.S.C.  UNDER Tile 18, TORTS , CRIMES , RICO ACT

**Defendants' actions involve a pattern of criminal behavior,Violation of Due Process, Fraudulent Misrepresentations, Conspiracy,   Property Depriva**tio**n**, **Inflict of Emotional Distress , Pain and Suffering , Negligent disregard, Malice, hate crime , discrimination , malicious prosecution, conversion , theft by conversion, embezzlement,**
Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

The defendants, with full knowledge of their lack of legal rights, willfully initiated and pursued a foreclosure action against the property, thereby violating my due process rights.
Throughout the lawsuit, the defendants engaged in a pattern of fraudulent behavior by filing multiple fraudulent assignments, falsely representing their ownership or authority over the security instrument.
During a bankruptcy mediation session, the defendants exhibited disrespectful behavior by openly mocking my limited English proficiency, deliberately undermining my ability to effectively participate in the proceedings, and violating my rights to fair treatment.

In further violation of my due process rights, the defendants filed a motion to set a foreclosure date despite lacking the requisite legal rights, demonstrating their intent to wrongfully take possession of the property.

Moreover, the defendants knowingly violated my due process rights by sending crucial notices related to the lawsuit to an incorrect address, depriving me of proper notice and impeding my ability to respond and exercise my rights.

I filed a motion challenging the court's jurisdiction, supported by compelling evidence obtained from a thorough loan audit, which raised substantial doubts about the court's authority over the matter. However, the defendants willfully neglected to address this motion, disregarding both the legal principles of jurisdiction and my right to a fair and impartial hearing.

The court's failure to promptly address my emergency motion to vacate the sale further violated my due process rights, causing significant harm and hindering my ability to seek appropriate remedies in a timely manner.

Furthermore, I diligently exercised my rights by filing several motions, including a counterclaim and a federal suit explicitly naming the law firms involved. However, the defendants continued litigating in the state court suit, in clear violation of the doctrine of claim preclusion and undermining principles of fairness and respect for the judicial system.

The defendants' procurement of a writ of possession without proper jurisdiction represents a severe ethical violation and a direct affront to the rule of law. Attorney Mesmer's knowledge of the legal implications surrounding the execution of the writ of possession underscores the deliberate nature of their actions and their disrespect for my rights and property.

Additionally, the defendants, together with the property management, conspired to deprive me of my personal property. Despite receiving two motions of cease and desist and being aware of the post-judgment status, they continue to have the property for sale and keep it in pending status, further violating my rights.

112.  <u>USC 42 1983  Rights under Color of Law:</u>

    a.  Fourth Amendment Rights: Violation of the Plaintiffs' protection against unreasonable searches and seizures.

    b.  Fifth Amendment Right to Due Process: Violation of the Plaintiffs' right to due process of law.

    c.  Eighth Amendment Rights: Violation of the Plaintiffs' protection against cruel and unusual punishment.

    d.  Fourteenth Amendment Right to Due Process: Violation of the Plaintiffs' right to due process of law.

     e.  Fourteenth Amendment Right to Equal Protection: Violation of the Plaintiffs' right to equal protection under the laws.

113.  <u>Title 18</u>

     a.  Section 242 - Deprivation of rights under color of law:

     b.  Section 241 - Conspiracy against rights:

           1.  conspiracy to unlawfully deprive a homeowner of their property rights.

114.  Section 245 - Federally protected activities:

     a.  obstruct homeowners in their housing-related rights.

115.  <u>Undeniable Rights:</u>

     a.  Fourth Amendment Rights: Violation of the Plaintiffs' protection against unreasonable searches and seizures.

     b.  Fifth Amendment Right to Due Process: Violation of the Plaintiffs' right to due process of law.

     c.  Eighth Amendment Rights: Violation of the Plaintiffs' protection against cruel and unusual punishment.

     d.  Fourteenth Amendment Right to Due Process: Violation of the Plaintiffs' right to due process of law.

     e.  Fourteenth Amendment Right to Equal Protection:  Violation of the Plaintiffs' right to equal protection under the law.

     f.  Right to Personal Security: Violation of the Plaintiffs' right to personal security and safety.

g.  Right to Enjoyment of Property: Violation of the Plaintiffs' right to the use and enjoyment of their property.

116.  <u>Crimes</u>

a.  Theft: Unauthorized individuals unlawfully appropriating the Plaintiffs' property without consent.

b.  Trespassing: Unauthorized entry onto the Plaintiffs' property and denial of access.

117.  <u>Foreclosure Act  (PTFA).</u>

a.  Tenant Protection Laws: Potential violations of local or state landlord-tenant statutes, including eviction procedures and notice requirements.

118.  <u>Torts</u>

a.  Intentional Infliction of Emotional Distress:

i.  Defendants' outrageous conduct causing severe emotional distress and harm to the Plaintiffs.

ii.  The Defendants' actions, such as engaging in illegal litigation, causing severe stress and depression to an elderly individual, and separating a mother from her animals, demonstrate extreme and outrageous conduct intentionally aimed at causing severe emotional distress to the Plaintiffs.

iii.  The Defendants' indifference, denials, and unwarranted actions have negligently caused significant emotional distress, hardship, anguish, and mental suffering to the Plaintiffs.

iv. Their negligent conduct, including failure to provide proper assistance and disregard for the Plaintiffs' rights, has resulted in severe emotional harm.

119. <u>Conversion</u>:

    a. The Defendants' unauthorized control and disposition of the Plaintiffs' property, including trailers, tractors, motorcycles, cars, and personal belongings, without lawful justification constitutes conversion. By wrongfully exercising control over the Plaintiffs' property, the Defendants have deprived them of their rightful possession and use of the property.

120. <u>Trespass to Chattels:</u>

    a. The Defendants' actions of allowing unauthorized individuals to enter the premises and unlawfully take the Plaintiffs' belongings amount to trespass to chattels. This tort arises from the intentional interference with the Plaintiffs' right to possess and use their personal property.

121. <u>Negligence</u>:

    a. The Defendants' failure to exercise reasonable care, such as their disregard for the Plaintiffs' rights, facilitation of theft, and denial of access to property, constitutes negligence. Their negligent conduct has caused financial losses, emotional harm, and significant hardship to the Plaintiffs.

122. <u>Breach of Fiduciary Duty:</u>

    a. If the Defendants had a fiduciary relationship with the Plaintiffs, such as through a trustee-client or attorney-client relationship, their misrepresentations, failure to protect Plaintiffs' interests, and facilitation of

theft may constitute a breach of fiduciary duty. This tort arises from the

failure to act in the best interests of the Plaintiffs and the breach of their

duty of loyalty and care.

123.    Invasion of Privacy:

    a.  The Defendants' unauthorized entry into the Plaintiffs' property, denial of

access to belongings, and failure to provide notice regarding the

disposition of property can be seen as an invasion of privacy. These

actions intrude upon the Plaintiffs' seclusion and private affairs, violating

their right to privacy.

124.    Consumer Protection Laws:

    a.  Potential violations of consumer protection laws, including deceptive trade

practices or unfair debt collection practices.

125.    Theft by Conversion:

    a.  The unauthorized disposal and appropriation of the Plaintiffs' property by

the Defendant.


**RICO**

**(Racketeer Influenced and Corrupt Organizations Act):**

Plaintiff's , assert a claim for violation of the Racketeer Influenced and Corrupt

Organizations Act (RICO) against the defendants based on the following factual

allegations:

126.    Enterprise Existence and Operation:

a.  The defendants, including Defendant WF, Defendant WSFS, Defendant Selene, and Defendant Mesmer, collectively operated as an enterprise for the purpose of carrying out fraudulent and illegal activities related to the foreclosure action on my property

b.  The defendants acted in concert with one another, sharing a common purpose and engaging in a pattern of racketeering activities.

127.   Pattern of Racketeering Activities:

a.  The defendants knowingly lacked the legal rights to foreclose the security instrument and filed fraudulent assignments to misrepresent their ownership or authority over the security instrument.

b.   The defendants engaged in a series of fraudulent actions, including initiating and pursuing a foreclosure action, disregarding jurisdictional challenges, and willfully neglecting critical motions and evidence.

c.   The defendants' actions were not isolated incidents but part of a pattern, exhibiting a consistent course of fraudulent conduct designed to wrongfully take possession of my property.

128.   RICO Elements

a.   Predicate Acts: The defendants committed various predicate acts under RICO, including fraud, mail and wire fraud, obstruction of justice, and conspiracy to commit these acts.

b.   Relationship to the Enterprise: The defendants' actions were conducted in the context of their participation in the enterprise and were aimed at furthering its objectives.

    c.   Impact on Interstate Commerce: The defendants' fraudulent activities had a substantial impact on interstate commerce, as they involved financial transactions, communications across state lines, and interactions with national financial institutions.

129.   Consequences and Damages:

    a.   As a result of the defendants' RICO violations, I suffered significant harm, including emotional distress, reputational damage, financial loss, and deprivation of property rights.

    b.   The defendants' actions deprived me of my constitutional rights, violated my due process protections, and caused substantial damages that require redress.

130.   **Relief**

a. Damages: Compensatory and punitive damages to compensate for the harm suffered due to the defendants' RICO violations.

b. Injunctive Relief: An injunction preventing the defendants from further engaging in fraudulent activities and seeking foreclosure on my property.

c. Declaratory Relief: A declaration from the court affirming the defendants' violation of RICO and their wrongful actions in the foreclosure proceedings.

d. Restitution: Restitution for the financial losses incurred as a result of the defendants' fraudulent conduct.

e. Any other appropriate relief deemed just and equitable by the court.

By virtue of the defendants' willful and systematic violations of RICO, I assert my right to seek redress for the damages suffered and hold the defendants accountable for their fraudulent and illegal actions.

## V- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein. The actions of Defendants, as set forth herein.

131.  The impact of the illegal litigation endured by Victor Lopez, an elderly gentleman of 85 years, has been devastating to his health and well-being. The unrelenting stress caused by this litigation has inflicted severe depression upon him, leading to multiple hospitalizations due to heart complications. The overall quality of his life has been greatly diminished, depriving him of the enjoyment he deserves in his twilight years.

132.  Equally distressing is the plight of Plaintiff Claudia Lopez, a victim of the uncertainty surrounding the foreclosure proceedings on her home. This uncertainty forced her to close her business, which was her sole means of supporting her three school-aged children. Additionally, Claudia was unjustly separated from her beloved animals, including horses and farm animals, resulting in significant emotional and financial distress for herself and her children.

133.  Furthermore, Claudia had been on the verge of fulfilling her dreams with a new business venture, only to lose everything due to an illegal eviction

orchestrated by the Defendants. Shockingly, despite Claudia's repeated attempts to retrieve her property, the Defendants denied her access and disregarded her rights. The property management, together with the Defendants' attorney, Tyler Mesmer, allowed unauthorized individuals to enter the premises and unlawfully take Claudia's belongings, including trailers, tractors, motorcycles, and cars. To add insult to injury, no notice was provided to Claudia regarding the disposition of her property.

134.    Despite Claudia's persistent efforts, her requests for assistance from the court, as well as written correspondence with the Defendants' representatives, were met with unwarranted denials and indifference. These actions have caused immeasurable anguish and hardship for Claudia, driving her to the brink of desperation with two attempts to end her own life.

135.    The Defendants' outrageous conduct and callous disregard for the Plaintiffs' rights have created a living nightmare for them.

136.    The Plaintiffs deserve restitution for the physical, emotional, and financial harm they have endured, and the Defendants must be held accountable for their reprehensible actions.

137.    In addition to the aforementioned suffering, it is crucial to highlight that Defendants' actions have inflicted severe financial losses upon Plaintiffs. Plaintiff Claudia Lopez, on the precipice of opening her own business, had painstakingly acquired valuable assets to support her entrepreneurial endeavor. However, due to the illegal eviction orchestrated by the Defendants, she was stripped of everything she had worked tirelessly to obtain.

138.    Despite Claudia's desperate attempts to reclaim her property, including sending numerous letters to the attorneys and property management, her pleas were callously denied. Defendants intentionally withheld information about how she could retrieve her belongings, leaving her in a state of helplessness. Shockingly, the property management, with the knowledge and acquiescence of Tyler Mesmer, the Defendants' attorney, allowed unauthorized individuals to pillage Claudia's possessions, including trailers, tractors, motorcycles, and cars, tools and all her personal belongings as the only property she was allowed to Leo was the clothes she was wearing the day of the eviction .

139.    This brazen disregard for the Plaintiffs' rights and the facilitation of theft on their property is an outrageous violation of the basic principles of decency and fairness

140.    The Defendants' actions have not only caused substantial financial harm but have also shattered the Plaintiffs' trust and confidence in the legal system.

141.    Plaintiffs Claudia and Victor Lopez have endured unimaginable suffering at the hands of the Defendants. Their physical and mental well-being has been ravaged, their livelihoods decimated, and their hopes for a better future obliterated. The Defendants' behavior represents a clear abuse of power and a complete disregard for the rights and dignity of the Plaintiffs.

142.    It is our fervent belief that this honorable court will recognize the gravity of the Plaintiffs' situation and deliver a just and equitable resolution. The Defendants must be held accountable

143.   This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

144.   Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

145.   Defendants' conduct is  so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

146.   Such conduct was undertaken with the specific intent of inflicting major distress on the Plaintiffs, such that Plaintiffs would be so badly distressed and debilitated that it would be unable to exercise legal rights in the Property; the right to title of the Property..

147.   As a proximate cause of Defendants' conduct, Plaintiffs have experienced loss of productivity.

148.   The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.

a.   Plaintiffs are therefore entitled to:Compensatory damages for the physical, emotional, and financial harm they have endured.

b.   Restitution for the wrongfully taken property, including trailers, tractors, motorcycles, cars, and other belongings.

41

c.  Declaratory relief to establish their rights and the Defendants' liabilities.

d.  Punitive damages in an amount appropriate to punish the Defendants and deter similar misconduct in the future.

e.  Injunctive relief to prevent further harm to the Plaintiffs.

f.  Any other relief deemed just and equitable by this honorable court.

## VI-SLANDER OF TITLE

149.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

150.  As indicated in the Forensic Loan Analysis Report, Defendants have no legal claim to the subject property.

151.  Defendants' actions have caused a slander of the title to the subject property. The filing of a Lis Pendens and void Assignments of Mortgage create a slander on the title.

152.  Defendants knew, or should have known, that the recorded documents would cause a slander on the subject property's title.

153.  "An action for slander of title is based upon the false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or of some right of his, causing him special damages." *Old Plantation Corp. v. Maule Indus., Inc.*, 68 So.2d 180, 181 (Fla. 1953) (internal citations omitted).

154.    Defendants, and each of them, disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and recording of various documents for foreclosure.

155.    Said Defendants knew that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and causing doubt upon Plaintiffs' legal title to the Property.

156.    By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiffs' legal title was made to the world at large.

157.    As a direct and proximate result of Defendants' conduct in publishing these documents. Plaintiffs' title to the Property has been disparaged and slandered, , and Plaintiffs have suffered, and continue to suffer, damages in an amount to be proved at trial.

158.    As a further proximate result of Defendants' conduct, Plaintiffs have incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

159.    As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to their

health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

160.    At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiffs and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

161.    The conduct of the Defendants in publishing the documents was fraudulent, oppressive, and malicious. Therefore, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the futures.

## VII-VIOLATIONS OF THE TRUTH IN LENDING ACT ("TILA")

Plaintiff re-alleges the allegations contained in the preceding paragraphs above as though fully set forth herein.

162.    Defendants failed to comply with provisions of the Truth in Lending Act, codified at 15 U.S.C. §1601, *et. seq*.

163.    The Truth in Lending Act requires that an initial disclosure is to be issued within three (3)working or business days from the receipt of the loan application. In addition, inclusions, exclusions, and applicable changes to the terms of loan or program must be provided to the borrower within three (3) working or business days.  Defendants failed to comply with this provision.

164.    In 2015, the United States Supreme Court ruled in *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790, that "TILA gives…a borrower, the right to rescind the subject loan until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under TILA."

165.    To date, the original lender, nor any Defendants named herein have provided Plaintiffs with true, complete, accurate or timely documents as required.

166.    Only after such provision has been complied with can the "3 DAY RIGHT TO CANCEL" period begin. If the required full Disclosures have not been provided, which in this case, they have not, then the period in which to cancel is extended for up to three (3) years, or until the lender moves to foreclose.

167.    The records thus far evidence that  has requested to cancel within the three (3) year stipulated time period, while still waiting to receive all truth-in-lending disclosures as required by Federal Law.

168.    Additionally, Defendants have failed to comply with TILA by:

a)  failing to deliver two copies of notice of the right to rescind (with all of the pertinent statutory disclosures);

b)  failing to properly and accurately disclose the "amount financed";

c)  failing to clearly and accurately disclose the "finance charge";

d)  failing to clearly and accurately disclose the "total of payments";

e)  failing to clearly and accurately disclose the "annual percentage rate";

f)  failing to clearly and accurately disclose the number, amounts and timing of payments scheduled to repay the obligation; and

g)  failing to clearly and accurately itemize the amount financed.

169.    As a result of Defendants' failure to comply with TILA, Plaintiffs have been damaged.

## VIII-VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")

170.    Plaintiff re-alleges the allegations contained in the preceding paragraphs above as though fully set forth herein.

171.    Defendants failed to comply with provisions of the Real Estate Settlement Procedures Act ("RESPA" or the "Act"), codified at 12 U.S.C. §2601, *et. seq*.

172.    The Act requires lenders, mortgage brokers, or servicers of home loans to provide borrowers with pertinent and timely disclosures regarding the nature and costs of the real estate settlement process.

173.    The Act also prohibits specific practices, such as kickbacks, and places limitations upon the use of escrow accounts. The Department of Housing and Urban Development ("HUD") originally promulgated Regulation X, which implements RESPA.

174.    The National Affordable Housing Act of 1990 amended RESPA to require detailed disclosures concerning the transfer, sale, or assignment of mortgage servicing.

175.    Further substantive changes to RESPA included modifying the servicing transfer notice requirements and implementing new procedures and notice requirements related to borrowers' error resolution requests and information requests. The amendments also included new provisions related to escrow payments,

force-placed insurance, general servicing policies, procedures, and requirements, early intervention, continuity of contact, and loss mitigation.

176.    Defendants failed to provide Plaintiff with certain required disclosures and/or statements as required under RESPA.  Specifically, Defendants failed to provide Plaintiff with the Affiliated Business Arrangement Disclosure.

177.    Defendants failed to provide Plaintiff with certain required disclosures and/or statements as required under RESPA.  Specifically, Defendants failed to provide Plaintiff with the Servicing Disclosure Statement.

178.    Defendants failed to provide Plaintiff with certain required disclosures and/or statements as required under RESPA.  Specifically, Defendants failed to provide Plaintiff with the Escrow Account Disclosure.

179.    As a result of Defendants' failure to comply with RESPA, Plaintiff has been damaged.

## IX-<u>QUIET TITLE</u>

180.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.All Defendants named herein claim an interest and estate in the property adverse to plaintiffs in that defendant asserts it is the owner of the note secured by the deed of trust to the property the subject of this suit.

181.     All Defendants named herein claims an interest and estate in the property adverse to plaintiffs in that defendant asserts it is the owner of deed of trust securing the note to the property the subject of this suit.

182. The claim of all defendant are without any right whatsoever, and defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

183. The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to plaintiffs' title, and these claims constitute a cloud on plaintiff's title to the property

### X-DECLARATORY RELIEF

184. Plaintiffs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiffs' estate.

185. Plaintiffs request the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to plaintiffs' title to the property; and

186. Plaintiffs request the court award plaintiffs, costs of this action, and such other relief as the court may deem proper.

187. Plaintiffs request a determination of the validity of the Trust Deed as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deed.

188. Plaintiffs request a determination of whether any Defendant had authority to foreclose on the Property.

189.    Plaintiffs requests all adverse claims to the real property must be determined by a decree of this court.

190.    Plaintiffs request the decree declare and adjudge that plaintiffs are entitled to the exclusive possession of the property.

191.    Plaintiffs request the decree declare and adjudge that plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

## XI-VIOLATION OF TILA, 15 U.S.C. § 1601, ET.SEQ.

192.    Plaintiffs request the decree declare and adjudge that defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

193.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

194.    Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

195.    Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

196.    As a direct and proximate result of Defendants' violations Plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

197.    Defendants were unjustly enriched at the expense of Plaintiffs who are therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

198.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

199.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

200.    The loan to Plaintiffs was a federally regulated mortgage loan as defined in RESPA.

    a.  Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

b.  Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and

c.  Whether the payments were reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

201. HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is disproportionate to the situation Plaintiffs find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiffs suffer financially as a result of the loan product sold to Plaintiffs.

202. Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving.

203.  As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.


**XII-RESCIND**

204. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

205. Plaintiffs were  entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) TILA Violations; 2) Failure to

provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; 4) Fraudulent Inducement; 5) making illegal or fraudulent transfers of the note and deed of trust; and 5) Public Policy Grounds, each of which provides independent grounds for relief.

206.    The Truth in Lending Act, 15 U.S.C §1601, et.seq. extend Plaintiffs' right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan which was not affordable and would ultimately benefit Defendants following the negative amortization that accrued.

207.    The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

208.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs, respectfully submit this Request for Relief before this Honorable Court. We assert our rights and seek appropriate remedies against Defendants.
Base on all the violations plaintiff request :

### A. Declaratory Judgment:
Plaintiffs request a declaratory judgment from this Honorable Court affirming that:

1. There is no valid loan agreement between Plaintiffs and Defendants.
2. Defendants violated Plaintiffs' rights.
3. The attorneys involved in this matter engaged in unethical and illegal procedures.

**B. Estoppel:**

Plaintiffs assert that Defendants are estopped from asserting any claims or interests in the property due to their fraudulent and deceptive actions. Defendants knowingly misrepresented the existence of a loan, leading Plaintiffs to enter into a transaction under false pretenses. Consequently, Plaintiffs request that this Court:

a. Preclude Defendants from claiming any rights, liens, or interests in the property based on the principles of estoppel.

**C. Quiet Title:**

Plaintiffs assertively request this Honorable Court to issue an order to quiet title in their favor, declaring them as the rightful and sole owners of the property, and to extinguish and eliminate any and all claims, liens, or interests held by Defendants or any persons claiming under them.

D. **Relief for conversion :**

Plaintiffs assertively Request this honorable Court the a proper relief base on the $450000.00 value of the converted Property.

1. to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

2. A declaration from the court acknowledging the defendants' violations of my due process rights, fraudulent misrepresentations, conspiracy, and property deprivation. Setting aside the foreclosure action and any related judgments based on the defendants' lack of legal rights, fraudulent acts, and violations of my due process rights.

3. Compensatory damages for the emotional distress, harm to my reputation, financial losses, and property deprivation caused by the defendants' intentional misconduct

4. Imposition of appropriate sanctions against the defendants and their legal representatives for their willful disregard of the law, fraudulent actions, conspiracy, and obstruction of justice.

5. An injunction prohibiting the defendants and their agents from further engaging in any actions to deprive me of my rights or interfere with my property.

And any relief deemed just and equitable by the court, in accordance with the law and principles of justice, rectify the defendants' violations of my due process rights, fraudulent misrepresentations, conspiracy, and property deprivation, and provide the necessary remedies to restore justice and protect my rights as a property owner.

**Plaintiffs further request the following relief:**

1. Immediate return of the down payment amounting to $100,000.00, with proper interest from year 2008 to present as it was procured under fraudulent circumstances and no valid loan was ever provided by the defendants.

2. Disgorgement of all profits obtained by Defendants through the pooling and securitization of Plaintiffs' credit, which were intentionally concealed from and not disclosed to Plaintiffs.

**Furthermore Plaintiffs request that this Court:**

1. Declare the nonexistence of a valid loan agreement.
2. Affirm the violation of Plaintiffs' rights.
3. Disbar the attorneys involved in this matter.
4. Disbar the Realtors involved this suit.

5. Impose appropriate sanctions on the attorneys for their unethical and illegal procedures.

6. Punish defendants for the crimes committed to the full extent of the law.

Plaintiffs firmly request that the Court expeditiously grant the relief sought, providing a just and equitable judgment that not only protects Plaintiffs' rights but also serves as a deterrent against fraudulent practices in the financial industry. Additionally, Plaintiffs urge the Court to take appropriate disciplinary actions against all so called professionals involved, disbar them, and impose necessary sanctions to ensure the integrity of the legal profession and real estate profession.

***In addition Plaintiffs request $ 20 millions dollars  relief on the Counts.***

### STANDING

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

**For Declaratory Relief,**

including but not limited to the following Decrees of this Court that:

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of,
   above-described real property.

d. Mortgage Originator has no enforceable secured or unsecured claim against the Property;

h. Defendants, and each of them, and all persons claiming under them, have no estate, right,

title, lien, or interest in or to the real property or any part of the property.

### FRAUD IN THE CONCEALMENT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

**FRAUD IN THE INDUCEMENT**

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

**For each and  every RIGHTS VIOLATED**

**TORTS AND CRIMES**

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action

**INFLICTION OF EMOTIONAL STRESS**

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

**SLANDER OF TITLE**

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following

**Decrees of this Court that:**

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

56

d. The Mortgage Originator had no enforceable secured or unsecured claim against the Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the above-described by real property.

h. Defendants, and each of them, and all persons claiming under them, have no estate, right,title, lien, or interest in or to the real property or any part of the property.

## QUIET TITLE

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following

**Decrees of this Court that:**

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

d. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the above-described  real property.

h. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or  interest in or to the real property or any part of the property.

## DECLARATORY RELIEF

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following

**Decrees of this Court that:**

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

d. The Originator has no enforceable secured or unsecured claim against the Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

h. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

### VIOLATION OF T.I.L.A.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following

**Decrees of this Court that:**

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

d. The  Originator has no enforceable secured or unsecured claim against the Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

h. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

### VIOLATION OF R.E.S.P.A.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

58

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following

**Decrees of this Court that:**

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

d. The Mortgage Originator has no enforceable secured or unsecured claim against the
   Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the
   above-described real property.

h. Defendants, and each of them, and all persons claiming under them, have no estate, right,
   title, lien, or interest in or to the real property or any part of the property.


## RECISSION

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following

**Decrees of this Court that:**

a. Plaintiffs, Plaintiffs are the prevailing party;

b. The Sponsor has no enforceable secured or unsecured claim against the Property;

c. The Depositor has no enforceable secured or unsecured claim against the Property;

e. Determines all adverse claims to the real property in this proceeding;

f. Plaintiffs are entitled to the exclusive possession of the property;

g. Plaintiffs own in fee simple, and is entitled to the quiet and peaceful possession of, the
   above-described real property.

d. The Mortgage Originator has no enforceable secured or unsecured claim against the
   Property

h. Defendants, and each of them, and all persons claiming under them, have no estate, right,
   title, lien, or interest in or to the real property or any part of the property.

Respectfully submitted



Claudia Lopez

## **DEMAND FOR JURY TRIAL**

Plaintiffs  hereby demands a trial by jury on all issues so triable.

Dated: June 5  2023

## **Affidavit**

1. It is not now, nor has it ever been good intentions as defendants, with full knowledge of their lack of legal rights, willfully initiated and pursued a foreclosure action against the property, thereby violating my due process rights.

1. Throughout the lawsuit, the defendants engaged in a pattern of fraudulent behavior by filing multiple fraudulent assignments, falsely representing their ownership or authority over the security instrument.

2. During a bankruptcy mediation session, the defendants exhibited disrespectful behavior by openly mocking my limited English proficiency, deliberately undermining my ability to effectively participate in the proceedings, and violating my rights to fair treatment.In further violation of my due process rights,

3. The defendants filed a motion to set a foreclosure date despite lacking the requisite legal rights, demonstrating their intent to wrongfully take possession of the property

4. Moreover, the defendants knowingly violated my due process rights by sending crucial notices related to the lawsuit to an incorrect address, depriving me of proper notice and impeding my ability to respond and exercise my rights.

5. The plaintiffs filed a motion challenging the court's jurisdiction, supported by compelling evidence obtained from a thorough loan audit, which raised substantial doubts about the court's authority over the matter. However, the defendants willfully neglected to address this motion, disregarding both the legal principles of jurisdiction and my right to a fair and impartial hearing.

6. The Brevard County court's failure to promptly address my emergency motion to vacate the sale further violated my due process rights, causing significant harm and hindering my ability to seek appropriate remedies in a timely manner.

7. Furthermore, I diligently exercised my rights by filing several motions, including a counterclaim and a federal suit explicitly naming the law firms involved. However, the defendants continued litigating in the state court suit, in clear violation of the doctrine of claim preclusion and undermining principles of fairness and respect for the judicial system.

8.  The defendants' procurement of a writ of possession without proper jurisdiction represents a severe ethical violation and a direct affront to the rule of law.

9.  Defendant Attorney Tyler  Mesmer's knowledge of the legal implications surrounding the execution of the writ of possession underscores the deliberate nature of their actions and their disrespect for my rights and property.

10. Tyler Mesmer,  together with Defendants All Florida Property Group and his eviction crew ( (to be added to this suit ) conspired and deprived me of All of my personal property not allowing me to retrieve one single item of my personal property.

11. Despite numerous attempts to retrieve my personal property following the illegal eviction, the defendants have willfully denied me access to the premises and my belongings.

12. The property that was wrongfully taken from me held immense sentimental value and represented the culmination of years of hard work, dedication, and cherished memories. Within the premises were irreplaceable items, including but not limited to:

    a. Photographs of my children capturing precious moments and milestones.

    b. The hair of my grandmother, which I treasured as a memento of her existence and a symbol of my family's heritage.

    c. The first hair strands of my children, symbolize their growth and innocence.

    d. Paintings, representing my artistic endeavors and creative expression.

    e. Flowers, which held personal significance and were a source of joy and solace.

    f. Their first tooth, signifies the milestones of my children's growth and development.

g. Antiques and collectibles that were acquired over time, reflect my passion and interests and with incredible monetary value.

h. My entire collection of clothes, was accumulated with hard work and intended for everyday use.

i. Business computers are essential for my professional pursuits.

j. Items vital for the establishment of a new business, representing my aspirations and entrepreneurial dreams.

I need to add that the property is located on 5 acres and used to be a horse petting farm so adding to the damage defendants took

1. 3 motorcycles
2. A 1971 red Volkswagen convertible
3. Horse trailers
4. Motorcycle trailer
5. 3 lawn trailers
6. A 26ft flatbed
7. Tools
8. Lawnmowers and many other items will be mentioned in the suit

13. The loss of these possessions and the subsequent damage caused by the defendant's actions are irreparable and go beyond monetary compensation. No amount of money can adequately replace the sentimental value attached to these items, nor can it compensate for the emotional distress and anguish I have endured as a result of this unjust eviction and the subsequent denial of my property.

14. The plaintiffs filed post-judgment motions that aimed to render the lower court case void. These motions were filed in accordance with the law and held the potential to rectify the injustices I have suffered. However, I have recently discovered that Tyler Mesmer, the

opposing party's legal representative, has knowingly and willfully engaged in unethical conduct throughout the proceedings.

15. Tyler Mesmer, in direct violation of the rules of civil procedure, has demonstrated a complete disregard for his professional obligations and has committed several torts against me, thereby violating my rights as a litigant. It is alarming to note that exploiting pro se litigants and taking advantage of the inherent bias within the court system appears to be a recurring pattern in his conduct.

16. Shockingly, Tyler Mesmer has taken extreme measures to manipulate the court proceedings in his favor. He has gone as far as procuring the court to refuse the acceptance of any further lawfully filed motions from me, thereby hindering my ability to present crucial evidence and arguments essential to support my case.

17. It is essential to bring to the attention of this honorable court that our decision to seek the intervention of the court was driven by the desire for a fair and impartial resolution to the injustices we have endured. However, the actions of Tyler Mesmer, combined with the apparent bias within the court, have severely compromised the integrity of the proceedings and undermined the pursuit of justice.

18. Numerous notices of cease and desist have been duly served to All Florida Property, explicitly instructing them to halt any further efforts related to the sale of the property. These notices were intended to preserve the status quo and ensure that justice could be pursued in a fair and equitable manner. Regrettably, the defendants have blatantly ignored these notices and persist in their endeavors to sell the property, further exacerbating the harm I have already endured.

19. The ongoing sale of the property by the defendants not only demonstrates a lack of regard for the legal process but also represents a deliberate attempt to evade accountability and avoid responsibility for their illegal actions. This perpetuates the injury and injustice inflicted upon me as a result of the illegal eviction and loss of my personal property